**This order is SIGNED.**

**Dated: June 18, 2020**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*ar*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re: <br><br> ERROL DENNIS ULLOA & <br> JIMENA C. ULLOA <br><br> Debtors. | Bankruptcy Number: 18-20366 <br><br> Chapter 7 <br><br> *Filed under Chapter 13* <br><br> Hon. Kevin R. Anderson |
|---|---|

MEMORANDUM DECISION ON DEBTORS' MOTION TO RETAIN
FUNDS FROM WELLS FARGO SETTLEMENT (ECF NO. 88)

In this case, the Debtors seek to retain $16,813.44 issued by Wells Fargo as a refund for the unnecessary, forced placement of collateral protection insurance in 2008 in connection with the Debtors' vehicle loan. Because the Debtors did not know about their entitlement to a refund until Wells Fargo mailed it to their bankruptcy trustee, the Debtors assert that it is not property of their bankruptcy estate and should be turned over to them rather than retained by

the Chapter 7 trustee. For the reasons set forth below, the Court finds that the Debtors' claim for a refund from Wells Fargo arose pre-petition, and thus is property of their bankruptcy estate that is subject to administration by the Chapter 7 trustee.

## I.  Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(a)–(b), 157(b). The Debtors' Motion to Retain Funds from the Wells Fargo Settlement is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and/or (O). Venue is appropriate in this District under 28 U.S.C. §§ 1408–1409, and notice of the hearing was properly given to all parties in interest.

## II.  Facts[1]

1. Errol Dennis Ulloa and Jimena C. Ulloa (the "Debtors") filed a Chapter 13 bankruptcy case on January 19, 2018.[2]

2. On October 9, 2018, the Court confirmed the Debtors' Chapter 13 plan that provided for a return to non-priority unsecured creditors of the greater of 15% of allowed claims or a pot of $1,153 distributed *pro rata*.[3] After completion of the claims allowance process, the 15% return to unsecured creditors required a total disbursement of $10,911.[4]

3. On June 17, 2019, the Chapter 13 Trustee received a letter from Wells Fargo Auto dated June 14, 2019. The letter listed its subject as, "Reimbursement related to Wells

---

[1] The Court sets forth relevant, material facts that are gleaned from docket filings, and the docket itself. The Court incorporates herein the stipulated facts set forth by the parties at ECF No. 102. In the event that these facts contradict the facts in ECF No. 102, the facts in this decision will control.

[2] ECF No. 1.

[3] ECF No. 43.

[4] ECF No. 60.

Fargo* auto loan; 2007 Chrysler 300" (the "Reimbursement Notice").[5] In relevant part, the Reimbursement Notice explained that:

> We are reaching out to share some information regarding the Wells Fargo auto loan above. We recently conducted a review of our Collateral Protection Insurance (CPI) program. As a reminder, CPI is a type of insurance that protects against loss or damage to a vehicle.
>
> **We determined that we applied unnecessary CPI charges to the loan**. The charges associated with the CPI policy(ies) may have contributed to the repossession of the vehicle.[6]

After referencing the policy number and dates associated with the account (April 1, 2008 to September 4, 2008), the Reimbursement Notice also stated:

> We carefully thought about what we can do, and are providing financial reimbursement, with the enclosed check in the amount of $16,813.44. The payment is in addition to any CPI-related refunds we previously sent. Cashing this check does not waive any current or future legal claims against Wells Fargo.[7]

4. Enclosed with the Reimbursement Notice was a check for $16,813.44 made payable to the order of Lon Jenkins, the Chapter 13 Trustee for the District of Utah (the "CPI Refund").[8]

5. The CPI Refund arises from the Debtors' loan from Wells Fargo in 2007 in connection with their purchase of a 2007 Chrysler 300 (the "Vehicle"). Because Wells Fargo allegedly did not have proof that the Debtors had insured the Vehicle, Wells Fargo force-placed a CPI policy covering the period from April 1, 2008 to September 4, 2008.

6. As explained in the Reimbursement Notice, the Debtors indeed had the required insurance on the Vehicle. So Wells Fargo, "carefully thought about what" it could do

---

[5] *Id*.
[6] *Id*. (Emphasis added.)
[7] *Id.*
[8] *Id.*

to rectify this error and determined some eleven years later to refund $16,813.44 to the Debtors.[9]

7. On August 1, 2019, the Chapter 13 Trustee filed a motion to modify the Debtors' plan to apply the CPI Refund as a lump sum contribution and thereby increase the return to unsecured creditors from $10,911 to $22,681.[10]

8. It is undisputed that the Debtors did not know about the CPI Refund until the Chapter 13 Trustee moved to modify their plan.

9. On August 23, 2019, the Debtors objected to the Trustee's motion to modify their plan by asserting that instead of changing the return to creditors, the CPI Refund should be applied to cure a delinquency and then shorten the length of their plan.[11]

10. On September 25, 2019, the Court entered an order granting the Trustee's motion to use the CPI Refund to increase the return to unsecured creditors.[12]

11. On October 9, 2019, the Debtors filed a voluntary Notice of Conversion to Chapter 7.[13]

12. The case was converted, and the Elizabeth R. Loveridge was appointed as Chapter 7 Trustee ("Chapter 7 Trustee").

13. On October 22, 2019, the Chapter 13 Trustee filed a Motion to Disburse Balance on Hand in Case Converted to Chapter 7 which sought disbursement of the CPI Refund, less Chapter 13 Trustee fees, to the Chapter 7 Trustee.[14]

---

[9] The Court is unaware as to why Wells Fargo sent the Reimbursement Notice and the CPI Refund check to the Chapter 13 Trustee rather than directly to the Debtors.
[10] *Id*.
[11] ECF No. 62.
[12] ECF No. 66.
[13] ECF No. 68.
[14] ECF No. 71.

14. On November 15, 2019, the Debtors filed an Objection to the Motion to Disburse Balance on Hand in Case Converted to Chapter 7 (the "Objection to Disbursement").[15]

15. On December 5, 2019, the Court entered an Order Determining Disbursement of Balance on Hand in Case Converted to Chapter 7 which directed the Chapter 13 Trustee to pay the Chapter 7 Trustee $15,602.87 and directed that the Debtors had 30 days to contest the funds as property of the Chapter 7 estate.[16]

16. On December 19, 2019, the Debtors filed a Motion to Retain the Wells Fargo Funds ("Motion to Retain").[17]

17. On January 13, 2020, the Chapter 7 Trustee filed an Objection to the Debtor's Motion to Retain.[18]

18. On January 13, 2020, the Court granted the U.S. Trustee's Motion Denying Discharge for both Debtors pursuant to § 727(a)(8) and Fed. R. Bankr. P. 4004(d), as the Debtors had received a Chapter 7 discharge within eight years of this Chapter 7 case.[19]

19. On March 19, 2020, the Chapter 7 Trustee and the Debtors filed a Stipulated Agreement of Facts.[20] On March 20, 2020, the Debtors and the Chapter 7 Trustee also filed an agreed Motion to Strike the Hearing, requesting that the Court render a decision based on the filed documents.[21]

---

[15] ECF No. 74.
[16] ECF No. 83.
[17] ECF No. 88
[18] ECF No. 95.
[19] ECF. No. 94.
[20] ECF No. 102.
[21] ECF No. 103.

20. On March 23, 2020, the Court granted the motion to Strike Hearing, and took the matter under advisement.[22]

### III. Analysis

The issues are whether the Debtors, as of the petition date, held a legally-enforceable claim against Wells Fargo for a recovery of the improper CPI charges, and whether the CPI Refund constitutes "proceeds . . . from property of the estate" under § 541(a)(6) that "the estate acquire[d] after the commencement of the case" under § 541(a)(7). The Chapter 7 Trustee contends that the CPI Refund is sufficiently rooted in the prebankruptcy past to be property of the estate because it is the dates of the contract and CPI payments that control the analysis. On the other hand, the Debtors contend that their knowledge of the CPI Refund is the determining factor, and because the Debtors were not aware of the CPI Refund until Wells Fargo sent it to their Chapter 13 trustee, the CPI Refund is not property of the estate.

#### 1. Property of the Estate Under 11 U.S.C. § 541

Property interests in bankruptcy are "created and defined by state law."[23] Once identified as a legally-cognizable property right under applicable non-bankruptcy law, the bankruptcy court then looks to bankruptcy law – specifically § 541 – to "resolve the extent to which that interest is property of the bankruptcy estate" by considering "whether that interest existed before Debtors filed their bankruptcy petitions."[24]

Section 541(a)(1) provides that the bankruptcy estate consists of "all legal or equitable interests of a debtor in property as of the commencement of the case" "wherever located and

---

[22] ECF No. 105.

[23] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[24] *Parks v. Dittmar (In re Dittmar),* 618 F.3d 1199, 1204 (10th Cir. 2010).

by whomever held."[25] This definition is intentionally broad such that "[w]hen a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of estate. . . . [E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of 11 U.S.C. § 541."[26] "Even contingent interests that may or may not vest for years at the time of their creation are not necessarily excluded."[27]

For example, even if the "enjoyment" of a pre-petition property interest cannot be realized until after the bankruptcy filing, the proceeds of such interest may still constitute property of the estate. In *Segal v. Rochelle*, 382 U.S. 375 (1966), the debtor incurred business losses in years prior to the bankruptcy filing, but the resulting tax refund was not payable until after the bankruptcy filing. As in this case, the debtors in *Segal* sought to receive the tax refund as opposed to it going to the trustee. The Supreme Court held that even though "enjoyment" of the tax benefit could not be realized until after the bankruptcy filing, the right to receive the refund was "sufficiently rooted in the prebankruptcy past" to constitute property of the estate.[28]

Further, the fact that a third party controls the timing and amount of distributions relating to a debtor's pre-petition property interest does not alter this conclusion. In *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199 (10th Cir. 2010), the debtors both worked for an aircraft company. Their union negotiated a collective bargaining agreement to provide its members with an equity interest in the company. However, the equity program was not formalized until a year after the debtors' bankruptcy filing. Thereafter, the debtors received a

---

[25] 11 U.S.C. § 541(a)(1).
[26] *Dittmar*, 618 F.3d at 1207 (citing to *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).
[27] *Id*. (citation omitted).
[28] *Segal*, 382 U.S. at 380.

substantial distribution under the equity program that the trustee sought to recover for the benefit of the estate. The debtors argued – and the bankruptcy court and the appellate panel agreed – that the distribution was not property of the estate because the debtor's interest in the equity program on the petition date was only a "hope, anticipation, or expectation," and that any distribution to union members was entirely at the discretion of the company.[29] On appeal, the Tenth Circuit reversed, finding that so long as the debtors had a legally recognized interest in the equity program at the time of their bankruptcy filing – which they did as members of the union – it was sufficiently rooted in their prebankruptcy past to constitute property of the estate under § 541. And this legal conclusion was not altered by the fact that the debtors' receipt of benefits under the equity program was subject to the control, discretion, and timing of a third party.

These decisions inform the Court's analysis of the Debtors' pre-petition interest in the CPI Refund.

### 2. As of the Petition Date, the Debtors had a Legal Claim to a Refund of the Unnecessary CPI Charges.

In the Reimbursement Notice, Wells Fargo acknowledges the following: "We determined that we applied unnecessary CPI charges to the loan," and that these unnecessary charges related to the Debtors' "CPI Policy WF8123819, effective April 1, 2008 to Sept. 4, 2008." This admission by Wells Fargo makes clear that under any number of legal theories (e.g., fraud, mistake, misrepresentation, breach of contract, breach of good faith and fair dealing, unfair and deceptive acts, etc.), the Debtors were entitled to bring a cause of action for a refund of the unnecessary CPI charges. In Utah, a "cause of action arises when it

---

[29] *Dittmar*, 618 F.3d at 1204.

becomes remediable in the courts."[30] Each time the Debtors paid Wells Fargo for the unnecessary CPI charges between April and September of 2008, they acquired a cause of action against Wells Fargo that was remediable in the courts. Thus, this Court finds that the Debtors' legal right to a refund from Wells Fargo arose during 2008.

The Debtors assert, and no one disputes, that they did not realize that their loan payments to Wells Fargo included amounts for the unnecessary CPI policy. Thus, the Debtors argue that the right to the refund only arose once Wells Fargo determined it had made the unnecessary charges and issued the refund – which events occurred post-petition. However, like the debtors in *Dittmar*, the fact that a third party (i.e., Wells Fargo) determined the amount and timing of the refund does not alter this Court's legal conclusion that the Debtors had a pre-petition claim to the refund. Further, the fact that the Debtors were unaware of the unnecessary charges would toll a statute of limitations[31] such that on the petition date, the Debtors could have brought a remedial legal action against Wells Fargo for a recovery of the unnecessary CPI charges.

The Court's conclusions are consistent with other cases that have addressed the issue of Wells Fargo and its refunds to debtors in bankruptcy arising from its improper actions in connection with consumer loans. In *Porrett v. Hillen (In re Porrett)*, 564 B.R. 57 (D. Idaho 2016), Wells Fargo engaged in bad creditor conduct by improperly funneling certain borrowers into sub-prime loans with a higher interest rate. In connection with a settlement with the Federal Reserve Board, Wells Fargo agreed to issue refunds to such borrowers,

---

[30] *McKean v. McBride*, 884 P.2d 1314, 1317 (Utah Ct. App. 1994) (citing to *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990)).

[31] *See e.g., Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015) (a party's ignorance of an injury is generally a ground for the equitable tolling of a statute of limitations); and UTAH CODE. ANN. § 78B-2-305(3) (applying a three-year statute of limitation for fraud or mistake "except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake.")

which included the debtors. While these events occurred pre-petition, Wells Fargo issued its refund to the debtors post-petition. The debtors argued that the "'qualifying event'– the one that created the rights and remedies for the specified class of borrowers – was the Consent Order, not the liability for some misdeed that may have occurred prior to bankruptcy."[32] Unlike the present case where Wells Fargo has admitted in the Reimbursement Notice that it made "unnecessary CPI charges," in *Porrett*, Wells Fargo specifically did not admit to wrongdoing in the Consent Order. The debtors thus argued that they had no pre-petition cause of action against Wells Fargo. Both the bankruptcy court and the district court rejected this argument, noting that just because Wells Fargo would not admit to wrongdoing, that did not mean that the debtors did not have a claim against Wells Fargo for routing them into a high interest-rate mortgage. The district court thus found that the debtors had a pre-petition claim against Wells Fargo, thereby making the refund property of the debtors' bankruptcy estate.

Directly on point is *In re Bardales*, 609 B.R. 260 (Bankr. D. Idaho 2019), where the debtors likewise received a CPI refund from Wells Fargo based on improper charges made years before their bankruptcy filing. The Chapter 7 trustee sought to retain the refund as property of the estate. The debtors responded that the refund was not property of the estate because they became "entitled to payment only as a result of qualifying events occurring after their bankruptcy."[33] The *Bardales* court recounted the background of Wells Fargo's systemic and problematic practice of improperly charging borrowers for unnecessary CPI policies, the subsequent class-action lawsuit, and the resultant remedial program whereby Wells Fargo agreed to refund millions to injured borrowers. The court then engaged in a careful analysis as

---

[32]*Porrett* 564 B.R. at 64.
[33]*Bardales,* 609 B.R. at 265.

to the nature of the debtors' claims against Wells Fargo, the status of those claims on the petition date, the scope of property of the estate under § 541, and whether the post-petition CPI refund was related to the debtors' pre-petition property interests. The court then held as follows: (1) on the petition date, the debtors' property interests under § 541(a) included their claim against Wells Fargo for a refund of the unnecessary CPI charges; (2) the CPI refund represented proceeds from that property interest under § 541(a)(6); and (3) the post-petition receipt of the CPI refund was traceable to this pre-petition cause of action under § 541(a)(7). Thus, the court held that the debtors' CPI refund was property of the bankruptcy estate. This Court agrees with and adopts the careful reasoning of Judge Meier in *Bardales* in support of its finding that the CPI Refund in this case is property of the bankruptcy estate under § 541 to which the trustee is entitled to administer for the benefit of the estate.

### 3. The Debtors' Reliance on *Purcell* is Inapplicable

The Debtors' argument in defense of their claim to the CPI Refund rests on a single case, *In re Purcell*, 573 B.R. 859 (Bankr. D. Kan. 2017). In *Purcell*, after the discharge and closing of her Chapter 13 case, the debtor received personal injury damages for a failed medical implant. Although the implant occurred pre-petition, its failure, injury, and resulting monetary award occurred after the debtor completed her plan and the court closed the bankruptcy case. The Chapter 13 trustee then re-opened the case and asserted that the personal injury funds were property of the estate. The *Purcell* court found under Kansas state law that a product liability claim does not arise at the time the product is implanted, but at the time it fails. Since the debtor's implant did not fail until after her bankruptcy case was closed, the damage award was not property of the estate.

Unlike *Purcell*, the causes of action in this case arose pre-petition when the Debtors paid the unnecessary CPI charges. As stated in the Reimbursement Notice, the improper charges occurred in connection with a CPI Policy on the Vehicle for the period April 1, 2008 to September 4, 2008. Thus, the Debtor's claim for a refund of these amounts arose in 2008, and its legal viability remained through the petition date.

### IV.  Conclusion

The Debtors make emotionally appealing arguments that twelve years ago, Wells Fargo improperly charged them for an unnecessary CPI policy; that they had no basis to know about the CPI Refund until after their bankruptcy filing; that if they had known about the improper charges and their right to a refund from Wells Fargo, they might have avoided bankruptcy; thus, it is unfair for the Trustee to take their refund. But the clock cannot be unwound, and the Debtors cannot be excused from the legal consequences that flow from the voluntary conversion of their case to Chapter 7 even though they do not qualify for a discharge.[34] Based on the Bankruptcy Code and controlling case law, the Court must conclude that the Debtors' interest in the CPI Refund was "sufficiently rooted in the prebankruptcy past"[35] to constitute property of the estate under § 541(a)(6) and (a)(7). Thus, it is rightfully subject to the Trustee's possession, control, and administration.

---

[34] Because the Debtors received a discharge in prior Chapter 7 case within eight years before the petition date of this case, they are not entitled to a discharge under § 727(a)(8). See ECF No. 98, "Order Denying Discharge Pursuant to 11 U.S.C. § 727(a)(8)."

[35] *Segal v. Rochelle*, 382 U.S. 375, 380 (1966).

—–ooo0ooo—–

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing MEMORANDUM DECISION ON DEBTOR'S MOTION TO RETAIN FUNDS FROM WELLS FARGO SETTLEMENT (DOCKET NO. 88) shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Gale K. Francis gfrancis@agutah.gov
- Elizabeth R. Loveridge tr eloveridge@strongandhanni.com, rchristensen@strongandhanni.com;eloveridge@ecf.axosfs.com
- Jared B. Pearson jared@pearsonlawfirm.org
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

**Jimena C. Ulloa**
**Errol Dennis Ulloa**
5548 S. Red Cliff Dr. #D
Salt Lake City, UT 84123